UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT L. SMALL,                    :
                                    :  Civil Action No.  06-1363  (RMB)
            Plaintiff,              :
                                    :
            v.                      :  OPINION
                                    :
DAVID OWENS, et al.,                :
                                    :
            Defendants.             :

**APPEARANCES:**

        ROBERT L. SMALL, Plaintiff pro se
        #158775
        Camden Correctional Facility
        P.O. Box 90431
        Camden, New Jersey 08101

**BUMB**, District Judge

        Plaintiff Robert L. Small  ("Small"), currently confined at

the Camden County Correctional Facility in Camden, New Jersey,

seeks to bring this action in forma pauperis pursuant to 42

U.S.C. § 1983, alleging violations of his constitutional rights.

Based on his affidavit of indigence and the absence of three

qualifying dismissals within 28 U.S.C. § 1915(g), the Court will

(1) grant Plaintiff's application to proceed in forma pauperis

pursuant to 28 U.S.C. § 1915(a) (1998) and (2) order the Clerk of

the Court to file the Complaint.

        At this time, the Court must review the Complaint pursuant

to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to

state a claim upon which relief may be granted, or because it
seeks monetary relief from a defendant who is immune from such
relief.  For the reasons set forth below, the Court concludes
that the Complaint should proceed in part.

I.   BACKGROUND

It appears that Small is a pretrial detainee confined at the
Camden Correctional Facility.  He brings this civil rights action
against numerous Camden Correctional Facility ("CCF") officials:
Warden David Owens; Warden Eric Taylor; Deputy Warden Anthony
Pizarro; Deputy Warden James Simon; Captain Johnson; Captain
Charles Walker; Captain John Doe #7; Lt. Fosler;  Lt. Nieves; Lt.
Richer; Lt. John Doe #1; Lt. John Doe #2; Lt. John Doe #4; Lt.
John Doe #10; Sgt. Duddy; Sgt. Melendez; Sgt. Vernon; Sgt.
Worlds; Sgt. John Doe #3; Sgt. John Doe #4; Corrections Officer
("CO") Cooper; CO Cross; CO D. Crossan; CO Hickson; CO Monroe; CO
Webster; CO Wescott; CO Whittick; CO John Doe #5; CO John Doe #6;
CO John Doe #8, CO John Doe #9; CO John Doe #11; CO John Doe #12;
CO John Doe #13. (Caption, Comp. at 8-12).  The following factual
allegations are taken from the Complaint and are accepted as true
for the purposes of this review.

Small complains that CCF correctional officers physically
assaulted him while others failed to intervene.  Small is
paralyzed from the waist down and depends on a wheelchair for
mobility.  On August 16, 2004, he contends that Defendant CO

2

Crossan flipped his wheelchair, while Defendant Sgt. Nieves
watched and remained inactive.  When the two officials entered
Small's recreational block to escort him back to his cell, CO
Crossan grabbed Small's wheelchair, rammed it into a stationary
chair, and then pulled down on the wheelchair's hand bars.  As a
result, Small flipped backward and struck his head on the floor.
He contends that these officers then not only refused him medical
treatment for this injury, but also denied him access to the
grievance system to report the event.  Sgt. Nieves would not
provide him with a grievance form because there was "a paper
shortage," while Captain Johnson laughed at Plaintiff's request.
(Comp. at 8).

On June 26, 2005, he further alleges that CO Whittick
assaulted him with a can of mace while CO Webster failed to
intervene.  CO Whittick returned to Small's cell with two copies
of Small's grievance form but did not produce the original.
After stating that he did not know the whereabouts of the
original, Small told him to "eat my f****** d**k."  In response,
CO Whittick opened Small's cell door and sprayed him with mace.
CO Webster watched but took no action.  After the incident CO
Whittick escorted Small to the medical station for
decontamination, however he complains that he did not receive
medical treatment before CO Whittick returned him to his cell.
(Id. at 9).

3

Small next complains that officials confiscated his wheelchair or provided him with a sub-standard one on several occasions.  The first incident occurred on June 15, 2005.  Sgt. Vernon placed Small in a quarantine cell while Lt. John Doe #1 removed his wheelchair for twelve hours.  During this time Small alleges that he was bedridden, unable to maintain personal hygiene, and subject to bed sores and swelling.  The second incident occurred on June 18, 2005 when Sgt. Worlds and CO Monroe confiscated Small's "personal wheelchair" and replaced it with a wheelchair that had no leg rests.  Forced to drag his legs and feet on the ground and subject to back pain and discomfort, Small used this wheelchair for twenty days.  The third incident allegedly occurred on June 28, 2005 when Captain Walker gave CO Crossan and Sgt. Melendez an order to remove plaintiff's wheelchair.  He had no wheelchair access for five days and again remained bedridden.  The fourth incident occurred on July 6, 2005 when Sgt. Melendez and Lt. John Doe #2 gave CO Cross an order to confiscate Small's wheelchair for twenty four hours.  The final incident allegedly occurred on July 7, 2005 when CO Cooper, Sgt. John Doe #3, and Lt. John Doe #4 removed plaintiff's wheelchair for twenty four hours because he didn't "need to use it at night."  (Id. at 8-11).

Since the June 28th incident Small has not had access to his "personal wheelchair".  He therefore alleges a violation of his

Fifth Amendment right by Deputy Warden Pizarro with regard to the
deprivation of his property. He states that not only did
officials deny him his wheelchair, but also that correctional
officers and nurses allowed other inmates to use it.
Consequently, the wheelchair is now in need of repair. Small
asserts that the Deputy Warden Pizarro is liable for the expense
of repairs given that he had knowledge of the deprivation. (Id.
at 12).

Small further alleges that officials endangered his welfare
by placing him among other inmates after Deputy Warden James
Simon mandated that he have no further inmate contact. He
asserts that the first episode occurred on or about October 6,
2005 and involved CO Wescott, Sgt. Duddy, CO John Doe #5, CO John
Doe #6, Lt. Folser, Captain John Doe #7, Warden Eric Taylor,
Deputy Warden Anthony Pizarro, and Deputy Warden James Simon.
(Id. at 12). He claims that the next episode occurred on or
about October 23, 2005 and involved CO Albert Hickson, CO John
Doe #8, CO John Doe #9, Warden Eric Taylor, Deputy Warden Anthony
Pizarro, and Deputy Warden James Simon. Lastly, he asserts that
the third incident occurred on or about November 29, 2005 and
involved CO Monroe, Lt. John Doe #10, Captain Walker, CO John Doe
#11, CO John Doe #12, CO John Doe #13, Warden Eric Taylor, Deputy
Warden Anthony Pizarro, and Deputy Warden James Simon. (Id. at
11-12).

5

Plaintiff makes additional assertions regarding his library and recreational access. He states that he has not had access to the law library since September 2005 for two reasons. First, he complains that his "Administrative Segregation Status" denies him "physical" library access and only allows him to make material requests. He alleges that this privilege denies him the opportunity to complete effective research. Second, he contends that his physical disability prohibits him from attending the library. He states that other prisoners with "Administrative Segregation Status" are granted access to the library but that he is not. Additionally, Small asserts that officials denied him full recreational access. On November 30, 2005, Deputy Pizarro reduced his one hour of recreation time to fifteen minutes. (Id. at 5).

While the body of the Complaint holds many officials liable for their immediate action, it also alleges similar violations against the supervisors of those officials. These supervisors include Warden David Owens, Warden Eric Taylor, and Lt. Richer. (Id. at 8-12).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA") requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996).  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the

7

former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

8

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

In addition, local government units and supervisors generally are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts

9

or acts may fairly be said to represent official policy, inflicts the injury" complained of); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat superior</u>. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Further, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55. "[I]n an official-capacity action, . . . a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

Here, Small asserts that Warden David Owens, Warden Eric Taylor, and Lt. Richer violated his civil rights simply because they were responsible for the actions of their subordinates.

10

Relying solely on a theory of <u>respondeat superior</u>, Small fails to state facts that demonstrate their personal involvement with respect to certain allegations.  He does not contend that their knowledge, direction, or acquiescence resulted in their liability.  Nor does he show that the implementation of their policy or custom violated his rights.  Accordingly, the Complaint will be dismissed against these supervisory defendants to the extent they are alleged liable solely on the basis of <u>respondeat superior</u>.  28 U.S.C. § 1915(e)(2)(B).

IV.  <u>ANALYSIS</u>

Construing the Complaint most liberally for the <u>pro se</u> Plaintiff, the Court finds that Plaintiff alleges the following claims: (1) denial of due process with respect to conditions of confinement; (2) denial of medical care; (3) denial of access to the Court system; (4) denial of equal protection; (5) denial of recreation; (6) excessive force; (7) failure to protect; (8) a state law claim of assault; (9) deprivation of property; and (10) a retaliation claim.

A.  <u>Due Process Conditions-of-Confinement Claim</u>

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  <u>See</u> <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the

11

Fourteenth Amendment.[1]  See Fuentes v. Wagner, 206 F.3d 335, 341

n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of

whether such a detainee has been deprived of liberty without due

process is governed by the standards set out by the Supreme Court

in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at

341-42.

> In evaluating the constitutionality of conditions or
> restrictions of pretrial detention that implicate only
> the protection against deprivation of liberty without due
> process of law, we think that the proper inquiry is
> whether those conditions amount to punishment of the
> detainee.  For under the Due Process Clause, a detainee
> may not be punished prior to an adjudication of guilt in
> accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention
> amounts to "punishment" in the constitutional sense,
> however.  Once the government has exercised its conceded
> authority to detain a person pending trial, it obviously
> is entitled to employ devices that are calculated to
> effectuate this detention. ...
>
> A court must decide whether the disability is imposed for
> the purpose of punishment or whether it is but an
> incident of some other legitimate governmental purpose.
> Absent a showing of an expressed intent to punish on the
> part of detention facility officials, that determination
> generally will turn on "whether an alternative purpose to
> which [the restriction] may rationally be connected is
> assignable for it, and whether it appears excessive in
> relation to the alternative purpose assigned [to it]."
> Thus, if a particular condition or restriction of
> pretrial detention is reasonably related to a legitimate
> governmental objective, it does not, without more, amount
> to "punishment."   Conversely,  if  a  restriction  or

---

[1]     It is not clear from the Complaint if Small is a
convicted state prisoner awaiting sentencing at Camden
Correctional Facility, or if he is a pre-trial detainee awaiting
trial.  At this preliminary stage, the Court will presume that
Small is a pre-trial detainee.

> condition is not reasonably related to a legitimate goal-
> -if it is arbitrary or purposeless--a court permissibly
> may infer that the purpose of the governmental action is
> punishment that may not constitutionally be inflicted
> upon detainees <u>qua</u> detainees.   ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540.  Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives.  441 U.S.

at 539 n.20.  Nor are grossly exaggerated responses to genuine

security considerations.  <u>Id.</u> at 539 n.20, 561-62.

Here, Small alleges five occasions when defendants

confiscated his wheelchair with no seemingly legitimate purpose.

Each time Small was either left bedridden or without a sufficient

wheelchair to manage his condition.  The periods of complete

deprivation allegedly lasted twelve hours to five days, while his

wheelchair allegedly had no leg rests for twenty days.  During

this time, Small alleges he could not perform, or had difficulty

performing, daily functions because he was, in effect, bedridden.

Moreover, the number of incidents allegedly by Small over a one

13

month period may be sufficient to show that the confiscation of his wheelchair was excessive and punitive.  In short, if these allegations are true, the adverse conditions as alleged by Small may be excessive in relation to their purpose, and a court may infer that it is intended as punishment.  See Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993).  The Court will allow this claim to proceed at this early stage, accordingly.

B.   Denial of Medical Care

Plaintiff next alleges that he was denied medical treatment, involving the confiscation of his wheelchair, the use of an improper wheelchair, and two additional incidents during which Small did not receive medical attention after hitting his head on the floor and being sprayed with mace.  He contends that defendants violated his right against cruel and unusual punishment as guaranteed under the Eighth Amendment.

As noted above, Small appears to have been a pre-trial detainee when he was allegedly denied medical care.  Thus, his constitutional claims are considered under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45 (1983) (holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor, 399

14

F.3d 150, 158 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). However, the Third Circuit has held that the "deliberate indifference" standard employed in Eighth Amendment cases also may apply to pretrial detainees under the Fourteenth Amendment. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003)("In previous cases, we have found no reason to apply a different standard than that set forth in Estelle . . . We therefore evaluate Natale's Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims under the Eighth Amendment."); Simmons v. City of Philadelphia, 947 F.2d 1042, 1067 (3d Cir. 1991), cert. denied, 503 U.S. 985 (1992); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990); Taylor v. Plousis, 101 F. Supp.2d 255, 262 n.3 (D.N.J. 2000).  See also Hubbard, 399 F.3d at 166 n.22. Accordingly, since the Fourteenth Amendment in this context incorporates the protections of the Eighth Amendment, the Court will apply the deliberate indifference standard of the Eighth Amendment in analyzing plaintiff's denial of medical care claim. See Simmons, 947 F.2d at 1067 (the rights of a detainee are at least as great as those of a convicted prisoner.)

15

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976); <u>Rouse v. Plantier</u>, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of the prison officials that constitutes deliberate indifference to that need. <u>Estelle</u>, 429 U.S. at 106; <u>Natale</u>, 318 F.3d at 582.

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must demonstrate that his needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as:  (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which the "the denial of treatment would result in unnecessary and wanton infliction of loss of pain" or "a life-long handicap or permanent loss."  <u>Atkinson v. Taylor</u>, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); <u>see also</u> <u>Monmouth</u>

16

County Correctional Institutional Inmates v. Lanzaro, 834 F.2d
326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of
and disregarded an excessive risk to inmate health or safety.)
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S.
825, 837-38 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself indicate
deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d
217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145
(D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly,
"mere disagreements over medical judgment do not state Eighth
Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir.
1990).  "Courts will disavow any attempt to second-guess the
propriety or adequacy of a particular course of treatment . . .
[which] remains a question of sound professional judgment."
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d
Cir. 1979) (internal quotation and citation omitted).  Even if a
doctor's judgment concerning the proper course of a prisoner's
treatment ultimately is shown to be mistaken, at most what would

17

be proved is medical malpractice and not an Eighth Amendment
violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Thus, the Third Circuit has found deliberate indifference
where a prison official:  (1) knows of a prisoner's need for
medical treatment but intentionally refuses to provide it; (2)
delays necessary treatment for non-medical reasons; or (3)
prevents a prisoner from receiving needed or recommended
treatment.  See Rouse, 182 F.3d at 197.  The court has also held
that needless suffering resulting from the denial of simple
medical care, which does not serve any penological purpose,
violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See
also Monmouth County Correctional Institutional Inmates, 834 F.2d
at 346 ("deliberate indifference is demonstrated '[w]hen . . .
prison authorities prevent an inmate from receiving recommended
treatment for serious medical needs or deny access to a physician
capable of evaluating the need for such treatment"); Durmer v.
O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897
F.2d 103 (3d Cir. 1990).

Here, Small alleges that defendants prevented his wheelchair
access, provided him with an inadequate wheelchair, and the
denied him medical attention on two additional occasions.  He
contends that the absence of his wheelchair left him bedridden,
unable to tend to his personal hygiene, and subject to bed sores
and swelling.  He further alleges he "was forced to lie in [his]

18

own feces and urine for five days." He further alleges that providing him with a wheelchair without leg rests left his feet to drag and created additional strain and discomfort on his back.

This Court finds that the facts, as alleged, if true, may support a claim that defendants have deliberately and repeatedly ignored plaintiff's need for a wheelchair and therefore caused him needless suffering. While Small's paralysis likely constitutes a serious medical need, this is a factual issue that is not appropriately decided on a <u>sua</u> <u>sponte</u> summary screening. Although a difference of medical opinion is not deliberate indifference and is insufficient to state a constitutional deprivation under § 1983, <u>See</u> <u>White v. Napoleon</u>, 897 F.2d at 110; <u>Andrews</u>, 95 F. Supp.2d at 228; <u>Peterson</u>, 551 F. Supp. at 145, the defendants' actions regarding the repeated confiscation and inadequate replacement of the wheelchair are alleged to have been deliberate to punish plaintiff. Thus, if true, these allegation may rise to the level of constitutional deprivation. Therefore, the Court will allow the denial of medical care claims to proceed on this issue.

C.   <u>Denial of Access to the Court System</u>

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983). In addition, the constitutional

guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal

assistance and participation in one's own defense against pending criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blakenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 197 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but so was stymied by inadequacies of the law library that he was unable to file even a complaint."  Lewis, 518 U.S. at 351.

Here, Small complains that defendants have denied him access to the library for the past seven months because of his administrative segregation status.  He alleges that other inmates in administrative segregation may physically attend the law library, but that he may not do so.  Instead, Small must request library material.  Furthermore, he states that defendants denied him access to the grievance system.

Although Small claims that he was denied physical access to the law library, he fails to allege facts that show he was denied complete library access.  Indeed, Small may make requests for legal material.  Further, he does not allege any actual injury as required for such a denial of access claim.  Small submitted this Complaint without any allegations that this effort was encumbered in any way.  He was able to file this Complaint.  Small also alleges that defendants denied him access to the grievance system, but plaintiff has filed grievances.  Consequently, Small fails to show any actual injury with respect to this claim and the Court will dismiss this denial of court access claim without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

D.   Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated

22

should be treated alike.  City of Cleburne, Texas v. Cleburne
Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe,
457 U.S. 202, 216 (1982)); Artway v. Attorney General of New
Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping
language, though, "[t]he Equal Protection Clause does not forbid
classifications.  It simply keeps governmental decision makers
from treating differently persons who are in all relevant
respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

     Proof of disparate impact alone, however, is not sufficient
to succeed on an equal protection claim;  a plaintiff also must
prove that the defendant intended to discriminate.  Village of
Arlington Heights v. Metropolitan Housing Development Corp., 429
U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242,
244-45 (1976).  Thus, discriminatory intent must be a motivating
factor in the decision, but it need not be the sole motivating
factor.  Village of Arlington Heights, 429 U.S. at 265-66.

     Once this intentional disparity in treatment is shown, a
court will proceed to determine whether the disparity can be
justified under the requisite level of scrutiny.  See City of
Cleburne, 473 U.S. at 439-40; Plyler v. Doe, 457 U.S. 202, 216-17
(1982); Price v. Cohen, 715 F.2d 87, 91-92 (3d Cir. 1983), cert.
denied, 465 U.S. 1032 (1984).  In testing the validity of state
legislation or other official action that is alleged to deny
equal protection, the "general rule is that legislation is

23

presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne, 473 U.S. at 439-40.  The general rule gives way, however, when a statute classifies by race, alienage, or national origin;  these classifications "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." Id. at 440.

The Equal Protection Clause protects prisoners from arbitrary racial discrimination.  Turner v. Safley, 482 U.S. 78, 84 (1987); Lee v. Washington, 390 U.S. 333 (1968).  The disabled are also protected by the Equal Protection Clause, but they are not a suspect class.  See  City of Cleburne, 473 U.S. 432. Nevertheless, a court's review of prison policies and actions is tempered by recognition that lawful incarceration necessarily limits many privileges and rights and that courts are ill-equipped to deal with many problems of prison administration. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987); Turner, 482 U.S. at 84-85 (1987).  Thus, an inmate's constitutional rights are subject to restrictions that are "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

To determine the constitutionality of a prison policy, a court must weigh four factors:

"First, there must be a 'valid, rational connection' between the prison regulation and the legitimate

24

> governmental interest put forward to justify it," and
> this connection must not be "so remote as to render the
> policy arbitrary or irrational."  Second, a court must
> consider whether inmates retain alternative means of
> exercising the circumscribed right.  Third, a court
> must take into account the costs that accommodating the
> right would impose on other inmates, guards, and prison
> resources generally.  And fourth, a court must consider
> whether there are alternatives to the regulation that
> "fully accommodate[] the prisoner's rights at de
> minimis cost to valid penological interests."

Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir. 1999) (quoting

Turner, 482 U.S. at 89-91) (other internal citations omitted).

See also DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000).  This

analysis applies to inmate equal protection claims.  See DeHart,

227 F.3d at 61.

Here Small complains that he is denied physical access to

the law library, in part, because of his physical disability.  On

the Complaint's face, there would appear to be no rational basis

for such denial given that Small alleges other inmates on

"Administrative Segregation Status" are permitted to attend the

library on a limited basis.  Under the above standard, Small may

be able to support an equal protection claim sufficient to avoid

sua sponte dismissal at this preliminary stage.  Therefore, based

upon the foregoing, the Court will allow this claim to proceed at

this time.

D.   Denial of Recreation

Next, Small alleges that his outdoor recreation time has

been reduced from one hour to fifteen minutes after having

received thirty additional days on disciplinary status.  The
denial of exercise or recreation can result in a constitutional
violation.  "[M]eaningful recreation 'is extremely important to
the psychological and physical well-being of the inmates.'"
Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988)(*quoting*
Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)); see also
Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)("[d]eprivation
of outdoor exercise violates the Eighth Amendment rights of
inmates confined to continuous and long-term segregation.");
Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983); Campbell
v. Cauthron, 623 F.2d 503, 506-07 (8th Cir. 1980); Kirby v.
Blackledge, 530 F.2d 583, 587 (4th Cir. 1976); Loe v. Wilkinson,
604 F. Supp. 130, 135 (M.D.Pa. 1984).  However, the lack of
exercise can only rise to a constitutional level "where movement
is denied and muscles are allowed to atrophy, [and] the health of
the individual is threatened."  Spain, 600 F.2d at 199.  Thus, a
constitutional violation will occur when the deprivation of
exercise extends for a prolonged period of time and tangible
physical harm resulting from the lack of exercise is
demonstrated.

Here again, as Small is a pretrial detainee, his claim must
be evaluated under the Fourteenth Amendment standard as set forth
in Bell v. Wolfish.[2]  Plaintiff simply alleges a reduction in his

---

[2] Small actually alleges a violation of double jeopardy
rather than violation of due process under the Fourteenth

26

recreational time.  He does not allege any harm or injury as a result of this limited loss of recreational activity.  There is no prolonged deprivation of a constitutional magnitude that would suggest that the defendants' action was intended to punish Small, or that it was an exaggerated response to genuine security considerations in a segregated unit.  Therefore, this denial of recreation claim will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

E.  Excessive Force

Excessive force cases fall into three categories:  (1) those involving the use of force to effectuate an arrest; (2) those against a person in police custody and/or pretrial detainee; and (3) those involving the use of force against a convicted person. Graham v. Connor, 490 U.S. 386, 394 (1989).  The Fourth Amendment standard is applied to those cases specifically directed to the method of arrest and seizure.  Custody and detention cases are subject to the Fourteenth Amendment substantive due process analysis; and cases involving the use of force against convicted individuals are examined under the Eighth Amendment's

---

Amendment.  Double jeopardy is inapplicable to this denial of recreation claim.  Institutional sanctions or conditions incident to confinement and administrative segregation do not constitute second punishment for the underlying offense for which plaintiff is confined.  The Double Jeopardy Clause provides, "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  Accordingly, the Court will screen this claim as alleging a violation of due process under the Fourteenth Amendment.

proscription against cruel and unusual punishment. Id. at 392-94. As a pretrial detainee at the time of the incident, plaintiff's excessive force claim is examined under the Fourteenth Amendment's substantive due process standard.

"A detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, there exists a minimum degree of "punishment" which must be exceeded before a constitutional violation may be found; "de minimus" punishment does not offend the Constitution. Id. at 539 n. 21.

Under this standard, Small appears to have adequately asserted that defendants used excessive force against him in violation of his due process rights under the Fourteenth Amendment. The allegations plainly infer that defendants acted with the intent to "punish" when they flipped plaintiff's wheelchair and sprayed him with a can of mace without provocation. At the time of the incidents, Small claims he was not resisting or defying correctional officers or disciplinary rules. Under these circumstances, if true, Small may be able to demonstrate that the defendants' actions on August 16, 2004 and June 26, 2005 were a grossly exaggerated response.

F.      Failure to Protect

Plaintiff also alleges that defendants failed to protect him during the alleged August 16, 2004, and June 26, 2005, assaults.

28

Additionally, Small asserts that defendants intentionally endangered his welfare on three occasions by placing him among inmates after he was to have no further inmate contact.

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," and that the defendant prison officials knew of and disregarded the excessive risk to inmate safety.  Farmer v. Brennan, 511 U.S. 825, 833-37 (1994).  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less proof than a reign of violence and terror."  Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether . . . prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that . . . prison official[s] knew of a substantial risk from the very fact that the risk was obvious."  Farmer, 511 U.S. at 842.  Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm.  Farmer, 511 U.S. at 834.

Applying Farmer to the instant action, the first question is whether Small alleges facts showing he faced a substantial risk of assault.  The second question is whether Small alleges facts

29

from which it could be inferred that defendants were unaware of and disregarded that risk.

The allegations in the Complaint state that defendants allowed the assaults on August 16, 2004 and June 26, 2005 and made no effort to intervene.  The Complaint does not demonstrate however, that defendants intentionally placed Small among other inmates following his "Administrative Segregation Status" and several altercations with other inmates.  There are insufficient facts to show defendants' knowledge of the risk or deliberate indifference.  Therefore, the Court is inclined to allow the failure to protect claim to proceed past the screening stage only with respect to the August 2004 and June 2005 incidents.

G.   State Law Claim of Assault

Small also appears to assert a common law assault claim with respect to the assault incidents on August 16, 2004 and June 26, 2005.  There is no original jurisdiction over this claim because diversity between the parties under 28 U.S.C. § 1332(a) does not exist.  However, even if there is no original jurisdiction based on diversity of citizenship, the Court is inclined to grant supplemental jurisdiction over the state law assault and battery claim, pursuant to 28 U.S.C. § 1367(a), because the claim is related to the excessive force claim over which the Court has original jurisdiction under 42 U.S.C. § 1983.  Therefore, this claim will be allowed to proceed past the screening stage.

H.   Deprivation of Property and Retaliation

Finally, Small alleges a loss of property claim with respect to the confiscation of his "personal wheelchair," which he appears to assert as a violation of his constitutional right to due process.  A pretrial detainee may be able to establish an unconstitutional deprivation of property by showing confiscation of materials either in retaliation for the exercise of constitutional rights or where, as a result, there was a denial of access to the Courts.  See Hodgin v. Agenst of Montgomery County, 619 F. Supp. 1550, 1553-54 (E.D. Pa. 1985).  Thus, absent proof of retaliation or denial of access, Small must demonstrate that the loss of his wheelchair amounted to a violation of procedural process.

The Due Process Clause prohibits a state or local government entity from depriving a person of property without due process of law.  Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  To analyze a due process claim, a Court conducts a familiar two-part inquiry:  a Court determines whether the Plaintiff "was deprived of a protected interest, and if so, what process was his due."  Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); see also Holman v. Hilton, 712 F.2d 854, 858 (3d Cir. 1983).

Property loss caused by the intentional acts of government officials do not give rise to a procedural due process claim

31

under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law. See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984); Holman, 712 F.2d at 856.[3]  The New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 et seq., provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government.  In this case, Small's recourse after the confiscation of his wheelchair would be a common-law tort action against the defendant under the New Jersey Tort Claims Act, N.J. STAT. ANN. § 59:1-1 et seq.  Plaintiff does not indicate that he attempted to file a complaint pursuant to the New Jersey Tort Claims Act.

Accordingly, the Court finds that the NJTCA was available to Small as a matter of law as a remedy for his alleged property

_____

[3]  In Logan, the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.  455 U.S. at 435-36.  But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000)(citing United States v. James Daneil Good Real Property, 510 U.S. 43, 53 (1993))(in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).  Here, there is nothing in the Complaint to suggest that officials confiscated Small's property pursuant to established state procedure; nor has this Court located any such established procedure.

loss at the hands of defendant.[4]  See  Holman, 712 F.2d at 857;

Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J.

1998), aff'd 186 F.3d 407 (3d Cir. 1999).  Because the NJTCA

provided all the process that was due for Small's alleged

property loss, this deprivation of property claim should be

dismissed for failure to state a claim upon which relief may be

granted.

Nevertheless, Small may have asserted facts sufficient to

support a claim of retaliation.  "Retaliation for the exercise of

constitutionally protected rights is itself a violation of rights

secured by the Constitution ... ."  White v. Napoleon, 897 F.2d

103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim,

plaintiff must demonstrate that (1) he engaged in

constitutionally-protected activity; (2) he suffered, at the

hands of a state actor, adverse action "sufficient to deter a

person of ordinary firmness from exercising his [constitutional]

rights;" and (3) the protected activity was a substantial or

motivating factor in the state actor's decision to take adverse

action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)

(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).

See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997)

---

[4] Small's due process claim fails as a matter of law even if
he is presently barred from pursuing his claims under the NJTCA
on the ground that he failed to file a tort claim notice within
90 days of accrual of the claim, as required by N.J. STAT. ANN. §
59:1-1 to 59:8-11.  See Logan, 455 U.S. at 437; Holman, 712 F.2d
at 857 & n.3.

(citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429
U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99
(6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

     Here, Small appears to allege that his wheelchair was
repeatedly confiscated by defendants in retaliation for
plaintiff's asserting his rights.  He also appears to assert that
all of the defendants' actions against him were retaliatory.
While it is plain from plaintiff's admissions that he was not
actually deterred from seeking redress through the administrative
process in prison or through court action, Small contends that
the defendants' actions, especially the repeated confiscation of
his wheelchair were intended as a form of punishment to prevent
or intimidate him from pursuing his claims.  Threats, the use of
disciplinary action to suppress plaintiff's right to complain,
and all of the incidental losses or denials of privileges as
alleged by plaintiff suggest impermissible retaliatory action in
violation of Small's First Amendment rights.  Therefore, based on
these allegations, if true, Small will be allowed to proceed on
his retaliation claims against defendants.

34

V.   CONCLUSION

For the reasons set forth above, plaintiff's deprivation of property claim, the failure to protect claim as to the October 6, 2005, October 23, 2005, and November 29, 2005 incidents, and the denial of recreation claim, will be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Further, the denial of access to the courts claim will be dismissed without prejudice for failure to state a claim.  The denial of medical care claims relating to the denial and repeated confiscation of his wheelchair and the failure to protect claim involving the August 2004 and June 2005 incidents will be allowed to proceed at this time.  The remaining claims asserting denial of due process with respect to conditions of confinement, denial of equal protection, excessive force, the state law claim of assault, and the retaliation claim will also be allowed to proceed against defendants at this time.  Finally, the Complaint will be dismissed with prejudice, in its entirety, as against the supervisory defendants, Warden David Owens, Warden Eric Taylor, and Lt. Richer, for failure to state a claim.  An appropriate order follows.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: August 10, 2006