NOT FOR PUBLICATION                                         [Dkt. Ent. 203]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW JERSEY**

**CAMDEN VICINAGE**

|  |  |
|---|---|
| Robert L. Small,<br><br>    Plaintiff,<br><br>        v.<br><br>Joseph Whittick,<br><br>    Defendant. | :<br>:<br>: Civil Action No.<br>: 06-1363 (RMB/JS)<br>:<br>:<br>: **OPINION**<br>:<br>:<br>: |

Appearances:

J. Philip Kirchner, Esq.
Rachel E. Licausi, Esq.
Elisa N. Bramble, Esq.
Flaster/Greenberg P.C.
Commerce Center
1810 Chapel Avenue West
Cherry Hill, NJ 08002

    Attorneys for Plaintiff

Christopher A. Gray
Alterman & Associates
8 South Maple Avenue
Marlton, NJ 08097

    Attorney for Defendant.

**BUMB**, UNITED STATES DISTRICT JUDGE:

1

This is a 42 U.S.C. § 1983 action brought by plaintiff Robert L. Small ("Plaintiff"), an inmate at Camden County Correctional Facility ("CCCF"), against a correctional officer at that prison, defendant Joseph Whittick ("Defendant").  Plaintiff alleges that Defendant sprayed him in the face with pepper spray, violating his Eighth Amendment right to be free from cruel and unusual punishment, and giving rise to several common law torts, including assault and battery, intentional infliction of emotional distress and negligence.

Asserting the protections of qualified immunity, Defendant now moves for summary judgment of the civil rights claim pursuant to Federal Rule of Civil Procedure 56(a).[1]  The Court denies this motion, because Defendant has failed to show the absence of a genuine issue of material fact as to whether he used excessive force in violation of Plaintiff's Eighth Amendment rights. Defendant also moves for summary judgment of the tort claims on the ground that Plaintiff failed to provide timely notice as required by the New Jersey Tort Claims Act.  The Court denies this motion, because Plaintiff has substantially complied with the notice requirement.

---

[1] The Court notes that Defendant failed to file his Statement of Material Facts Not in Dispute in separately numbered paragraphs as required by Local Rule 56.1(a).  The Court declines to dismiss his motion on these grounds, although it may do so under this Rule.

**JURISDICTION AND VENUE**

This Court has jurisdiction over Plaintiff's case based on 42 U.S.C. § 1983 and 28 U.S.C. § 1331.  Venue is proper under 28 U.S.C. § 1391(b).

**BACKGROUND**[2]

Plaintiff is a paraplegic and confined to a wheelchair due to a prior unrelated injury.  On the evening of June 26, 2005, Plaintiff sat in the "day room" of his cellblock at CCCF.  As he was playing chess with another inmate, he asked Sergeant Melendez to make a photocopy of a grievance form.  Sgt. Melendez agreed, copied the form, and asked Defendant to return the photocopy to Plaintiff, which he did.  Noticing that his original grievance form was missing, Plaintiff wheeled his chair to the locked "slider" door, made of steel and glass that separates the cellblock from the medical unit, where Defendant was located.  Plaintiff banged on the door to get Defendant's attention and requested the original copy back.  Defendant responded that he did not know what had happened to the original, since he had not made the copies, and that he was not going to discuss it further.  Plaintiff became angry and cursed at Defendant.  He

---

[2] All background facts are drawn from the parties' Rule 56.1 Statements of Material Fact and are construed in the light most favorable to Plaintiff.  See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004).

told Defendant through the door to "eat my fucking dick!" Defendant approached the door and asked to have it opened electronically.  When the door opened, Defendant sprayed Plaintiff in the face with Oleoresin Capsicum (commonly known as "pepper spray").

The parties dispute whether Plaintiff posed a danger to Defendant or anyone else prior to being pepper sprayed. Defendant alleges that he was merely trying to gain control over an "unruly" inmate.  He maintains that he was attempting to return Plaintiff to his cell, when Plaintiff approached him with his arms "flailing," thus necessitating the use of pepper spray. Plaintiff and several witnesses, however, tell a different story. They claim that after Plaintiff told Defendant to "eat my fucking dick," Defendant became angry and pulled out his pepper spray, then called for the door to be opened, at which point he sprayed Plaintiff. Officer Donna Webster, a corrections officer who witnessed the event, testified that Plaintiff was actually backing away from the door with his hands in a surrender motion as the slider door opened.  [Pl.'s Exs. D, B.]

After the incident, Defendant and Officer Webster wheeled Plaintiff to the medical unit to be "decontaminated," meaning to

4

have his face flushed with water, as required by CCCF policy.[3] However, Plaintiff alleges he never received any medical attention, despite his requests for help.

Defendant filed a report immediately following the incident, in which he claimed to have used the pepper spray in self-defense.  [Pl.'s Ex. F ("While attempting to lock [Plaintiff] in his cell, [Plaintiff] began flailing his arms in an attempt to strike me.")]  Defendant also filed a separate report charging Plaintiff with "threatening another with bodily harm," "using abusive language to a staff member," and "conduct which disrupts."  [Pl.'s Ex. G.]

Defendant's report went to a CCCF hearing committee whose job it was to investigate the internal charges against Plaintiff.  This committee determined that a videotape of the incident appeared to contradict Defendant's report.  It consequently referred the matter to CCCF's Internal Investigations Unit, where Sergeant Christopher Foschini took over the case.  Although unable to interview Defendant and thus complete his investigation,[4] Sgt. Foschini reviewed the videotape

---

[3] The CCCF Policy Manual states: "It is the responsibility of the officer using [oleoresin capsicum] spray to insure that all who have been affected receive medical attention." [Dep't of Corrections Gen. Order #057 on Chemical Irritants 2, Pl.'s Ex. E.]

[4] The parties disagree as to whether Defendant's employment terminated or whether he left on an extended sick leave.

and the charges, and interviewed Plaintiff and other witnesses, including Officer Webster and two inmates. Sgt. Foschini determined that Defendant's actions violated CCCF policies regarding use of force.[5] [Foschini Dep., Pl.'s Ex. C, 36:1-12 (Dec. 10, 2008).] Specifically, Sgt. Foschini concluded that Defendant had used force not in self-defense or to prevent injury to others or property,[6] but to punish Plaintiff for insulting him. Id. at 37:2-5. Sgt. Foschini did not have an opportunity to discipline Defendant, whose employment with the jail terminated during the course of the investigation. Id. at 23:8-16.

Plaintiff filed a formal grievance with CCCF and notified the acting Warden by letter, but never received a reply. [Pl.'s Ex. R; Small Dep. 152:14-16, 153:19-22, Pl.'s Ex. B.] On July 14, 2005, Plaintiff submitted a letter to the New Jersey Attorney General regarding the incident. [Pl.'s Ex. R.] He also requested that CCDC's Internal Affairs office draft a criminal

---

[5] See Dep't of Corrections Gen. Order #013, Pl.'s Ex. E, for CCDC's policy on use of force ("Force will never be used as punishment or discipline.").
[6] The transcript reads in relevant part:
    Q: So in your opinion based on your investigation, was [Defendant] in danger before or when he sprayed [Plaintiff]?
    A: Absolutely not.
    Q: Was anyone else in danger?
    A: No.
[Sgt. Foschini Dep., Pl.'s Ex. C, 30:7-12.]

6

complaint, which Plaintiff then signed. The case proceeded to trial, and the New Jersey Municipal Court found Defendant guilty of simple assault. On appeal, the Superior Court of New Jersey reversed the conviction, for reasons not entirely clear from the record.[7]

## STANDARD OF REVIEW

Summary judgment should be granted if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 250.

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "a mere scintilla of evidence," without more, will not give rise to a genuine issue for trial. Anderson, 477 U.S. at 249. In the face of such

---

[7] The Court notes that the appellate court's decision was not submitted as part of the record.

7

evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment.

Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

## DISCUSSION

Plaintiff asserts that Defendant's use of pepper spray violated his Eighth Amendment right to be free from cruel and unusual punishment.[8]  He brings this claim under 42 U.S.C. § 1983, which provides a federal cause of action to any person who is deprived of a constitutional or federal right by someone acting under color of state law.  Defendant asserts the protections of qualified immunity, claiming that he acted in good faith by using pepper spray on Plaintiff, who had become "angry, used foul language, and who had a history of assaulting corrections officers."  [Def.'s Summ. J. Br. 12.]

### A. Qualified Immunity

Notwithstanding § 1983's imposition of liability to state actors, courts have provided for a qualified immunity, which shields public officials from suit for their good-faith and

---

[8] Actually, Plaintiff has not clearly articulated what constitutional claims he alleges in this action.  His Second Amended Complaint asserts a claim for "use of excessive force" and "cruel and unusual punishment," but invokes the Fourteenth Amendment, which governs claims of excessive force by *pretrial* detainees. However, both Plaintiff and Defendant's summary judgment papers characterize this cause of action as arising under the Eighth Amendment, so going forward they will be bound by this theory of liability.  See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (discussing judicial estoppel doctrine).

9

objectively reasonable conduct.  Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).  The rationale underlying the doctrine is that officers should be on notice that their conduct is unlawful before they are subjected to suit.  Hope v. Pelzer, 536 U.S. 730, 740 (2002).  Thus, qualified immunity protects officials when they may have acted upon reasonable errors, whether mistakes of law or fact.  See Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).

The Supreme Court has suggested a two-step inquiry to determine whether a defendant-official is entitled to the protection of qualified immunity:  "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Id. at 816 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).[9]

However, where a Plaintiff asserts an Eighth Amendment violation and shows the requisite "malicious and sadistic use of force," the Court need not reach the second Saucier prong,

---

[9] While the two-step inquiry is no longer mandatory, it continues to provide a useful framework for conducting a qualified immunity analysis.  Brandt v. Monte, 626 F. Supp. 2d 469, 485 (D.N.J. 2009) (citing Pearson, 129 S. Ct. at 815-16).

10

because such force is always in violation of clearly established law. See Thomas v. Ferguson, 361 F. Supp. 2d 435, 442 n.7 (D.N.J. 2004) ("[W]here malicious and sadistic use of force is the issue of the constitutional cause of action, the qualified immunity test collapses into the same test as that of the constitutional issue, and is thus superfluous.") (citing Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002), and Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001)). In other words, the qualified immunity test collapses into the test for a constitutional violation.[10]

### 1. **Violation of Constitutional Right**

Thus, the Court's inquiry on summary judgment focuses on whether Plaintiff has shown an Eighth Amendment violation. The central question here is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (citing Hudson v. McMillan, 503 U.S. 1, 7 (1992)) (internal quotations omitted). Summary judgment for the defendant is inappropriate where the evidence, viewed in the light most favorable to the plaintiff, supports "a reliable

---

[10] Accordingly, the Court rejects Defendant's argument that it should first consider his claim for qualified immunity and then consider whether the force he employed was unconstitutionally excessive.

11

inference of wantonness in the infliction of pain." Brooks, 204 F.3d at 106 (citing Whitley v. Albers, 475 U.S. 312, 322 (1986), and Sampley v. Ruettgers, 704 F.2d 491, 495 (10th Cir. 1983) (holding that wantonness exists when a prison guard intends to harm an inmate)) (internal citations omitted).

In assessing whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts consider five factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. See Whitley, 475 U.S. at 319; Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009); Brooks, 204 F.3d at 106.

Addressing the first two prongs, Plaintiff offers ample evidence that Defendant's application of force was unnecessary and disproportionate in light of Plaintiff's non-violent conduct. By all accounts, Plaintiff was immobilized in his wheelchair and locked behind a metal door prior to Defendant opening the door and pepper spraying him. According to Plaintiff, when Defendant opened the slider door to allegedly

return Plaintiff to his cell, Plaintiff sat in his wheelchair and made no movement to attack Defendant. Officer Webster, in fact, stated that Plaintiff retreated from the door with his hands in a surrender motion. [Pl.'s Ex. N.] From this evidence, a reasonable jury could conclude that Defendant's use of force was unnecessary and disproportionate to Plaintiff's non-threatening conduct.

The third factor under Whitley requires the Court to consider the extent of the injury inflicted. Plaintiff claims that Defendant's application of pepper spray caused a burning sensation in his eyes, nose and mouth, and that he suffered psychological harm. [Pl.'s Opp. Br. 13 (citing Ex. B).] Defendant counters that the injury was *de minimis* and therefore not actionable.

Although the Eighth Amendment does not protect inmates against every minimal use of force, see Campbell v. County of Allegheny, 2010 WL 3420709 (W.D. Pa.) (citing Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002)), it does protect them from the unnecessary and wanton infliction of pain by correctional officers, regardless of whether they suffer serious, permanent injury as a result. See Hudson v. McMillan, 503 U.S. 1 (1992). Numerous courts have found that the use of pepper spray can give rise to an actionable Eighth Amendment claim where it is used on

an inmate who poses no threat to anyone's safety or prison security.  See, e.g., Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002) (finding that correctional officer's use of pepper spray could give rise to an Eighth Amendment claim where plaintiff "had not jeopardized any person's safety or threatened prison security"); Foulk v. Charrier, 262 F.3d 687, 701-02 (8th Cir. 2001) (finding that an application of pepper spray against a compliant inmate could give rise to an Eighth Amendment violation); Campbell v. Allegheny, 2010 WL 3420709 (W.D. Pa.) (recognizing a valid Eighth Amendment claim where plaintiff was placed in a restraint chair and maced); Athill v. Speziale, 2009 WL 1874194 (D.N.J.) (finding an Eighth Amendment claim where plaintiff was sitting on a bench playing cards and defendant-officer shot him with a mace gun); Bacon v. Sherrer, 2008 WL 906233 (D.N.J.).  Given Plaintiff's well-supported allegations that he posed no threat to safety, a reasonable jury could conclude that Defendant's application of pepper spray was unnecessary and wanton, and thus unconstitutional.

Defendant cites Giles v. Kearney, 516 F. Supp. 2d 362, 367 (D. Del. 2007), aff'd, 571 F.3d 318 (3d Cir. 2009), for the proposition that pepper spray may be used to subdue "unruly" inmates.  The Court does not dispute this holding, but notes that the Giles court issued this decision at the close of trial, after

14

assessing the credibility of the witnesses and weighing all the evidence.  There, the Court determined that the defendant's use of pepper spray was justified given plaintiff's disobedient and threatening conduct during an altercation in a shower.  Id. at 369.  At the summary judgment stage, however, the Court may not make such factual findings.  It must allow a claim to proceed where the evidence, viewed in plaintiff's favor, supports "a reliable inference of wantonness in the infliction of pain." Brooks, 204 F.3d at 106; see also Athill, 2009 WL 1874194 (denying summary judgment on a qualified immunity claim where "a reasonable jury could find that [defendant's use of a mace gun] was unconstitutionally excessive").

Under the fourth Whitley factor, the Court must consider the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them.  Defendant claims that he reasonably believed force was necessary to subdue Plaintiff, given Plaintiff's "unruly" behavior and alleged history of assaulting corrections officers.  However, Defendant has proffered little evidence to support this contention aside from his own testimony.  On the other hand, Plaintiff has offered testimony from both Officer Webster, who witnessed the event, and Sgt. Foschini, who led the internal investigation, both of whom concluded that

Plaintiff did not pose a threat to security and that Defendant's response was unreasonable and inappropriate. [Pl.'s Opp. Br. at 10-11 (citing Ex. D, C).]

Regarding the fifth prong of Whitley, Plaintiff alleges that Defendant made no effort to temper the severity of his response. Specifically, Defendant could have issued a verbal warning before using pepper spray, but he did not. [Pl.'s Opp. Br. 14 (citing Exs. M, N).] Plaintiff also claims that Defendant failed to ensure that Plaintiff was decontaminated after the attack, as required by prison policy.

Applying the Whitley factors, the Court concludes that a genuine issue of material fact exists as to whether Plaintiff's conduct justified Defendant's use of pepper spray. Viewing all facts and reasonable inferences in Plaintiff's favor, a reasonable jury could conclude that such force was excessive and that Defendant acted wantonly and maliciously in violation of Plaintiff's Eighth Amendment rights. Thus, Plaintiff has made a sufficient showing to overcome summary judgment.

    **B.  Notice under the New Jersey Tort Claims Act**

Defendant argues that Plaintiff's tort claims should be dismissed under the New Jersey Tort Claims Act (the "Act"), because Plaintiff failed to provide timely notice of his claims to the County of Camden.

The Act requires a person bringing a tort claim against a public official to give notice to the public entity within ninety days of the injury. N.J. STAT. ANN. § 59:8-8(a). A claim against the state "must be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission," but a claim against a local public entity "shall be filed with that entity." N.J. STAT. ANN. § 59:8-7.

Although Plaintiff did not file a formal notice with the County of Camden, he did file a formal grievance with CCCF and notified the warden directly in writing as well. See "Background," supra, at 6. Importantly, Plaintiff also filed a complaint with the New Jersey Attorney General, which described the event in detail and expressed his desire to press charges against Defendant. In light of these efforts, the Court finds that Plaintiff has substantially complied with the Act.

Where a plaintiff makes a reasonable effort to provide the notice required by the Act, courts have declined to allow an innocent mistake to serve as a bar to an otherwise diligently prosecuted claim. Ventola v. N.J. Veteran's Memorial Home, 751 A.2d 559, 564 (N.J. 2000) ("Although the [plaintiffs] were perhaps not as sophisticated a one would wish . . . their understandable confusion [concerning whether defendant veterans' hospital was operated by the federal or state government] should

not bar the presentation of their claim."); Feinberg v. State Dep't of Envtl. Prots., 644 A.2d 593 (N.J. 1994). Specifically, in Feinberg, the New Jersey Supreme Court found that notice of a claim against a local governmental agency provided to the attorney general was sufficient even though the Act required notice to be given directly to the local agency. Id. at 597. In that case, plaintiff's mistake as to which entity to notify did not defeat her claim given her diligence in attempting to learn the identity of all relevant parties and the fact that the original defendants failed to reveal the identity of the local entity involved. Id. ("Nothing in the Act evinces the legislative intent that governmental entities, whether intentionally or unintentionally, should be able to impale a diligent claimant on the Act's technical requirements for notification.") (internal citations omitted).

Similarly, Plaintiff has made substantial efforts to notify the necessary parties. He filed a complaint against Defendant with the New Jersey Attorney General on July 14, 2005, less than one month after the incident. [Letter to Peter C. Harvey, Pl.'s Ex. R.] It was reasonable for him as a *pro se* litigant to believe the Attorney General was the proper governmental agent to whom to report his legal claims against a corrections officer. Such notice does not fail under the Act simply because it was

18

mistakenly provided to the wrong governmental entity. Like the defendant in Feinberg, the Attorney General's office had the power to direct Plaintiff to the appropriate person to notify of his claims or to forward his letter to the proper place, but failed to do so.

Furthermore, Plaintiff's four-page letter to the Attorney General was sufficiently detailed to constitute valid notice under the Act. N.J. STAT. ANN. § 59:8-4. Plaintiff states his name and address and describes the incident in explicit detail. He describes the date, place, and circumstances surrounding the event, and notes that there were "numerous" witnesses. Plaintiff also names the Defendant and expresses his desire to file charges against him. Any records relating to this event, including records regarding Plaintiff's injuries, were obviously located at the prison, available to the Defendant.

The fact that CCCF launched an internal investigation into this incident immediately after it occurred also weighs in favor of Plaintiff. The purpose of the Act's notice requirement "is to 'compel a claimant to expose his [or her] intention and information early in the process in order to permit the public entity to undertake an investigation while witnesses are available and the facts are fresh.'" See Ventola, 751 A.2d at 560 (citations omitted). The prison's investigation, then,

suggests that Defendant has not been prejudiced by the lack of formal notice to Camden County.

Thus, the Court finds that Plaintiff has substantially complied with the Act's notice requirement, and his tort claims may therefore proceed.[11]

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment will be denied.  An appropriate Order will issue herewith.

Dated: September 27, 2010          s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    UNITED STATES DISTRICT JUDGE

---

[11] Because the Court finds that Plaintiff has substantially complied, it need not reach the second issue raised by Plaintiff that Defendant waived this defense.